UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **JOSEPH LEE ROBLEDO,** *Plaintiff* § § § | |
| v. § | No. 1:22-CV-01233-ADA |
| **YARDI SYSTEMS, INC,** *Defendant* § § § § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ALAN D. ALBRIGHT
      UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Yardi Systems, Inc.'s Motion for Summary Judgment, Dkt. 29. After reviewing the filings and the relevant caselaw, the undersigned recommends that Yardi's motion be granted.

### I.  BACKGROUND

This is a putative class action brought by Plaintiff Joseph Robledo against Yardi. Yardi is a California-based software company that creates and licenses property management software. Dkt. 1, at 1. Using one of Yardi's platforms, "RentCafe," landlords can allow tenants to pay their rent online. Dkt. 33-3, at 46. Because Yardi incurs costs to process payments, it charges service fees for certain types of payments. Dkt. 1, at 11. For instance, Yardi charges between $3.95 and $9.95 for debit card payments and 2.50% of the total transaction for payments by "VISA/MC/Diners/Discover/AMEX." *Id*. Yardi also offers free payment options, such as ACH/e-Check. Dkt. 29-2, at 74.

1

Robledo is a tenant at a Texas property, Walnut Creek, run by Westdale Asset Management. Dkt. 29-5, at 1. Westdale licenses RentCafe software from Yardi. *Id.* Robledo's lease began in August 2021. Dkt. 29-3, at 2. At the time, Walnut Creek had not enabled payments through RentCafe, and Robledo's lease did not authorize any service fees for rent payment. Dkt. 29-5, at 1; Dkt. 1, at 3. In July 2022, Walnut Creek emailed Robledo, letting him know that he would now be able to pay his rent on RentCafe. Dkt 29-6, at 4-6. The email prominently disclosed his payment options: ACH/e-Check, which were free, or debit- or credit-card payments, which came with a fee. *Id.* at 5. Further, each time Robledo logged onto the website to pay, the fees for paying via RentCafe were prominently disclosed. Dkt. 29-2, at 78-79.

Despite being conspicuously presented with the free e-Check option, Robledo opted to pay by debit card. *Id.* at 75. He paid with a debit card because he did not "even exactly know what that means, ACH/eCheck." *Id.* at 74. Beginning in August 2022, Robledo made several payments via debit card and paid a $4.95 service fee each time. Dkt. 1, at 11-12. Robledo now files this putative class action, alleging Yardi's service fees violate the Texas Debt Collection Act and support common-law claims for money had and received and unjust enrichment. *Id.* at 17-21.

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986);

2

*Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary-judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element

essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.     ANALYSIS

Robledo claims that Yardi's charging of service fees was unlawful. Specifically, Robledo asserts claims for violations of the Texas Debt Collection Act (TDCA), money had and received, and unjust enrichment. Yardi moves for summary judgment on each claim.

**A.     Robledo's TDCA Claim**

1.     Relevant Provisions of the TDCA

The Texas Debt Collection Act prohibits "a debt collector" from using "unfair or unconscionable means that employ" certain practices, including "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code § 392.303(a). Accordingly, Yardi is only liable for a TDCA violation if it is a "debt collector." Robledo argues that Yardi fits the statutory definition of a debt collector, and by charging service fees not authorized by Robledo's lease, Yardi violated the TDCA.

"When interpreting a statute, we look first and foremost to its text." *United States v. Alvarez-Sanchez*, 511 U.S. 350, 356 (1994); *see also, e.g.*, *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous."). The TDCA defines a "debt collector" as "a person who directly or indirectly engages in <u>debt collection</u> and

4

includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts." Tex. Fin. Code § 392.001(6) (emphasis added).[1] The Act defines "debt collection" as "an action, conduct, or practice in collecting, or in soliciting for collection, <u>consumer debts</u> that are due or alleged to be due a <u>creditor</u>." *Id.* § 392.001(5) (emphasis added). The Act defines a "consumer debt" as "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction" and "creditor" as "a party, other than a consumer, to a transaction or alleged transaction involving one or more consumers." *Id.* §§ 392.001(2), (3).

    2.    Is Yardi a "Debt Collector"?

Yardi argues that it is not a "debt collector" because that term only applies to creditors seeking to collect debts *for themselves*, whereas Yardi is collecting rent on behalf of others. Dkt. 29, at 19. Precedent within the Fifth Circuit supports the contention that one cannot be a "debt collector" unless the debt they are attempting to collect is their own. *See, e.g.*, *Scarbrough v. JPMorgan Chase Bank, N.A.*, No. 4:21-CV-3760, 2022 WL 2373725, at *10 (S.D. Tex. June 2, 2022), *report and recommendation adopted*, No. CV H-21-3760, 2022 WL 2359645 (S.D. Tex. June 30, 2022) ("McCarthy & Holthus does not qualify as a debt collector under § 392.001(6) because that section applies only to creditors seeking to collect debts for themselves."); *DeMarquis v. Alorica Inc.*, No. 1:20-CV-00634-LY, 2021 WL 8018068,

---

[1] In its briefing, Dkt. 33, at 18, and at oral argument on the motion, Robledo disclaimed any argument that Yardi fits within the statutory definition of a "third-party debt collector," *see* Tex. Fin. Code § 392.001(7), so the undersigned does not address that definition here.

at *3 (W.D. Tex. Oct. 28, 2021), *report and recommendation adopted*, No. 1:20-CV-634-LY, 2021 WL 8018065 (W.D. Tex. Dec. 3, 2021) (noting that the term "debt collector" under the TDCA applies only to "creditors seeking to collect debts originated by them").

The text and structure of the TDCA support the conclusions reached by these courts. To reiterate, the TDCA defines a debt collector as "a person who directly or indirectly engages in debt collection[.]" Tex. Fin. Code § 392.001(6). In contrast, the TDCA defines a "third-party debt collector," via incorporation of 15 U.S.C. § 1692a(6), as one "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be *owed or due to another*." *Id.* § 392.001(7) (emphasis added). The inclusion of the phrase "owed or due to another" implies that *non*-third-party debt collectors do not include those seeking to collect debts due to another. Indeed, if the term "debt collector" included those seeking to collect debts due to another, then the phrase "owed or due to another" in the definition of "third-party debt collector" would be superfluous. *See Hibbs v. Winn*, 542 U.S. 88, 89 (2004) ("[T]he rule against superfluities instructs courts to interpret a statute to effectuate all its provisions, so that no part is rendered superfluous."). Accordingly, the undersigned agrees with the consensus of district courts in the Fifth Circuit concluding that the definition of "debt collector" under the TDCA includes only those seeking to collect their own debts.

Robledo responds that, even if one needs to collect debt for themselves to be a debt collector, Yardi still qualifies. That is because, as Robledo argues, Yardi is collecting service fees *for itself*. Dkt. 33, at 20. But that argument contradicts the

6

TDCA's text. One is not a "debt collector" unless they "directly or indirectly engage[] in debt collection," which is defined as "an action, conduct, or practice in collecting … consumer debts[.]" Tex. Fin. Code § 392.001(5)-(6). "Consumer debts" are "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." *Id.* § 392.001(2). Here, Robledo was under no "obligation" to pay service fees until the moment he chose to make a rental payment online through Yardi's payment portal. If charging a consumer for a one-time purchase is "debt collection," every purchase in Texas would transform a merchant into a "debt collector" at the point of payment. Such a result would be absurd. While the undefined terms "obligation" and "transaction" are broad when considered individually, when read in the context of the TDCA—an Act exclusively policing debt-collection practices—the undersigned cannot conclude that these terms apply universally to all purchases made in Texas.

### 3. Is Yardi a Debt-Collection Form Seller?

Finally, Robledo argues in the alternative that Yardi is a debt collector because it "sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts." Tex. Fin. Code § 392.001(6). Essentially, Robledo's argument is that Yardi's payment portal on RentCafe is a "form" intended to be used to collect consumer debts. This is a novel interpretation—neither party cited a single case addressing this proposed application under the TDCA or any analogous statutes. Robledo's briefing on this subject is cursory, comprising just one sentence of a 28-page brief:

7

> Finally, Yardi is also a TDCA "debt collector" under § 392.001(6) because it "sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts." *See* parts II.E & F, *supra*; *see also* ECF No. 1 (Complaint) ¶¶ 24, 34-37; TDCA 392.001(6).

Dkt. 33, at 21.

Robledo's argument is so cursory as to be forfeited. A single sentence on what appears to be an issue of first impression is not enough to preserve an argument. *See, e.g.*, *Owens v. Specialized Loan Servicing, L.L.C.*, 694 F. App'x 950, 955 (5th Cir. 2017) ("In their responses to SLS's motion for summary judgment, the Owens made only a cursory mention of promissory estoppel. They did not argue that they relied to their detriment or changed their position in any way based on a promise that SLS would sign the Agreement. Thus, this argument is waived."); *Texas v. United States Env't Prot. Agency*, 829 F.3d 405, 435 (5th Cir. 2016) ("Because EPA offers nothing beyond this cursory comment, it has waived any argument about the scope of the stay."); *Heritagemark, LLC v. Unum Life Ins. Co. of Am.*, No. 4:22-CV-04513, 2024 WL 1078301, at *11 (S.D. Tex. Feb. 8, 2024), *report and recommendation adopted*, No. 4:22-CV-04513, 2024 WL 1443179 (S.D. Tex. Mar. 31, 2024) ("In its response, Plaintiff only cursorily mentions its breach of implied covenant claim in a single sentence with no meaningful analysis. . . . The Court is hard-pressed to not find those arguments waived due to inadequate briefing.").

Even if Robledo had not forfeited this "forms" argument, the undersigned cannot conclude that the rent payment that Yardi's product facilitates is a "consumer

debt."[2] As noted above, Yardi is a "debt collector" only if it engages in "debt collection," defined as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." Tex. Fin. Code § 392.001(5)-(6). "Consumer debt," in turn, is defined as "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." *Id.* at § 392.001(2).

To the undersigned's knowledge, no court has ever determined whether rent qualifies as a "consumer debt" under the TDCA. But courts that have addressed rent collection in the context of the federal Fair Debt Collection Practices Act (FDCPA)— which, similar to the TDCA, defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes," 15 U.S.C. § 1692a(5)—appear to have exclusively done so in the context of back/unpaid rent or some other obligation, that while not exclusively resulting from an extension of credit, nonetheless arises from a breach of some agreement. As the court in *Romea v. Heiberger & Assocs.* explained:

> Back rent by its nature is an obligation that arises only from the tenant's failure to pay the amounts due under the contractual lease transaction. In this respect, back rent is much like the obligation arising out of a

---

[2] Neither party meaningfully addresses what the undersigned sees as a fundamental question in this case—whether rent is a "consumer debt," as the TDCA defines that term. The undersigned addresses it here because it is a necessary component of the (inadequately briefed) analysis of whether Yardi's product falls within this "form seller" language in the statutory definition of a "debt collector." While the undersigned's conclusion below that Robledo's ongoing rent payments are not in the nature of a "consumer debt" covered by the TDCA could be dispositive of the case as a threshold issue, because the parties did not address the matter in this way, the undersigned has not either.

> dishonored check where a service has been rendered or goods sold on the premise of immediate payment. The obligation to pay the bounced check, like the duty to pay back rent, does not derive from an extension of credit but rather because the payor breached its payment obligations in the contract between the parties. Virtually all circuits that have addressed the issue of dishonored checks have held such checks to fall under the plain language of the FDCPA's definition of "debt." For the same reasons that those courts deemed dishonored checks to be debts under the FDCPA, we conclude that back rent is a debt.

163 F.3d 111, 115 (2d Cir. 1998) (internal reference omitted); *see also, e.g.*, *Mitchell v. Greenville Prop. Owners, LLC*, No. 3:21-CV-3103-L-BH, 2021 WL 5908970, at *1 (N.D. Tex. Dec. 14, 2021) (alleging "unspecified abusive debt collection practices in attempting to collect the debt (unpaid rent)"); *Darden v. Trans Union, LLC*, No. 6:12-CV-297, 2013 WL 12125739, at *1 (E.D. Tex. Oct. 28, 2013) ("This action arises from a debt incurred in connection with an apartment lease …. The apartment complex hired [defendant] to collect unpaid rent and charges.").

The undersigned agrees with Robledo that "construction of the TDCA 'is a holistic endeavor,' and requires interpreting each statutory section as part of a whole." Dkt. 33, at 19 (quoting *Williams v. Lakeview Loan Servicing LLC*, 509 F. Supp. 3d 676, 682 (S.D. Tex. 2020)). Having engaged in this holistic endeavor, the undersigned cannot conclude that Robledo's timely monthly rent payments are a "consumer debt" under the TDCA. Unlike back rent or a bounced check, Robledo's rent payment is not made in connection with an amount owed due to a breach of an obligation, and it is not made in connection with an extension of credit. Robledo pays his rent each month because he is *complying* with the terms of his lease. Yes, he is "obliged" to pay his rent each month, and yes, that obligation arises from the "transaction" of entering into his lease. But, as with Robledo's argument regarding

10

Yardi's collection of service fees, *supra* p. 7, if the undersigned were to construe every ongoing rent payment as a "consumer debt" under the TDCA, then every payment made by a consumer—whether for rent at the beginning of the month, or for a pack of gum at a convenience store—would qualify as a "consumer debt." Such a conclusion would defy not only the plain meaning of the term "debt" but would expand the scope of the TDCA beyond its stated scope, which, when considering the Act as a whole, is directed at policing creditors' and collectors' actions with respect to debtors, as those terms are commonly understood.

Robledo notes in his response that "the Fifth Circuit has held, '[t]he TDCA's definition of debt collector is *broader* than the FDCPA's definition.'" Dkt. 33, at 17 (quoting *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 722 (5th Cir. 2013) (emphasis added by Robledo)). But that observation in *Miller* was in reference to mortgage-servicing companies, which are expressly excluded from the FDCPA but not the TDCA. *Miller*, 726 F.3d at 722-23. That distinction has no bearing on the analysis here, in determining whether Robledo's monthly rent payments constitute a "consumer debt" under the TDCA. If anything, *Miller* and the authority it cites[3] only further underscores the conclusion that a monthly rent payment—unlike a mortgage payment (which by its very nature is paying down a debt)[4] or an obligation arising out of a breached indemnity agreement[5]—is not a "consumer debt."

---

[3] *See Miller*, 726 F.3d at 722-23 (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985); *Monroe v. Frank*, 936 S.W.2d 654, 660 (Tex. App.—Dallas 1996, writ dism'd w.o.j.)).
[4] *Perry*, 756 F.2d at 1208.
[5] *Monroe*, 936 S.W.2d at 659.

11

In light of the foregoing, the undersigned concludes that Robledo's recurring monthly rent payment is not a "consumer debt" within the meaning of the TDCA, and Yardi is not a "debt collector" under any reading of the statutory definition; Robledo's claim under the TDCA therefore fails.

### B.     Robledo's Common-Law Claims

Robledo's remaining claims for money had and received and unjust enrichment are foreclosed by the voluntary-payment doctrine. The voluntary-payment doctrine is a common law defense under which "[m]oney voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, deception, duress, or compulsion, cannot be recovered back merely because the party at the time of the payment was ignorant of or mistook the law as to his liability." *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 768 (Tex. 2005) (citation omitted). "The rule is a defense to claims asserting unjust enrichment; that is, when a plaintiff sues for restitution claiming a payment constitutes unjust enrichment, a defendant may respond with the voluntary-payment rule as a defense." *Id.* Robledo does not contend that he was defrauded or deceived; to the contrary, he conceded in his deposition that he knew of the processing fee and nonetheless voluntarily chose to pay it (and despite being offered fee-free methods of payment in the same portal). *See* Dkt. 29-2, at 25-30. This concession forecloses his ability to recover on these remaining common-law claims.

## IV.     RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT** Yardi's Motion for Summary Judgment, Dkt. 29, and enter final judgment in favor of Yardi.

## V.     WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED June 26, 2024.

 

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE